**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____ :
                                    :
RASHON JONES,                       :
                                    :   Civil Action No. 04-27 (JLL)
            Petitioner,             :
                                    :
        v.                          :       O P I N I O N
                                    :
ROY L. HENDRICKS, et al.,           :
                                    :
            Respondents.            :
_____ :
```

**APPEARANCES:**

Rashon Jones, <u>Pro</u> <u>Se</u>
#279453 105708C
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Debra G. Simms
Special Deputy Attorney General
Director, Appellate Section
Essex County Prosecutors Office
Essex County Courts Building
Newark, NJ 07102
Attorney for Respondent

**LINARES**, District Judge

      Petitioner, Rashon Jones, filed the within petition for a

Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Respondent

has filed an Answer.  The Court has considered all submissions.

For the reasons set forth below, the Petition will be denied.

## BACKGROUND

1. Factual Background

The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the Appellate Division's factual recitation:

> On March 8, 1995, at approximately 9:00 a.m.,
> defendant drove the teenage victim, Chavon Moore,
> ("Chavon" or "the victim") with whom he had had a
> child, to the high school that she attended on
> Thirteenth Avenue in Newark.  While they were sitting
> in the car, defendant repeatedly struck the victim's
> face, causing her face to hit the car window.  Outside
> the car, defendant punched Chavon in the jaw, causing a
> large amount of blood to come from her mouth.
>
> Summoned by a classmate of the victim who had
> witnessed the beating, the principal of the school ran
> outside.  The principal observed a man, who identified
> himself as the father of the victim's child, dragging
> the victim.  Defendant had thrown the victim against the
> side of the car.  The principal assisted Chavon to the
> office of the school nurse.  Blood was pouring out of
> her mouth while Chavon was in the nurse's office.
>
> The victim's jaw had been fractured in two
> locations.  As a result, her jaw was wired closed by
> an oral surgeon.  For eight weeks, she could sip food
> through a straw only.  Dr. John Frattellone, the oral
> surgeon who had treated Chavon, testified that a
> considerable amount of force would be necessary to
> cause the type of fracture that she had suffered.
>
> Nicole Davidson, a friend of the victim, testified
> that defendant telephoned her after he had attacked
> Chavon on March 8th.  He asked Ms. Davidson whether she
> knew where Chavon, who had left her home after the attack
> was located.  When Ms. Davidson responded that she did
> not, he said that when he found her, he would "fuck her
> up."

On May 4, 1995, Dr. Frattellone removed the upper portion of the wires restraining the victim's jaw and directed her to return the following week for removal of the remaining portion of the wires. She never returned because she was beaten to death two days later.

In May 1995, defendant; his brother, Quawee, also known as Latiff, Jonew; his cousin Tyree Chicks; and defendant's mother Thelma Jones Bullock lived at 679 D. South 10th Street in Newark. Defendant's mother testified that she was not at home on the night of May 5, or the early morning hours of May 6. On May 5, 1995, at approximately 10:00 p.m. defendant arrived at Chavon's home and drove her to his house.

Gloria Coker testified that on the night of May 5, 1995, she was in defendant's house with defendant's cousin, Harold Wright. At that time, the victim's son Teriq, defendant's brother Quawee, his brother's girlfriend Mahasin Johnson, and Tyree Chicks were there.

At approximately 2:00 a.m. on May 6, 1995, defendant and the victim, who was bleeding, entered the house through the rear door. The victim was asking for someone to help her and defendant was saying that he would kill her. The victim's head and mouth were bleeding and defendant was pulling her toward the staircase. She fell to the floor when defendant hit her head. Defendant then ran upstairs and returned with a "Tech 9" gun, hitting Chavon on the head with the gun.

Ms. Coker and Harold Wright then left the house. When they returned, defendant and the victim were on the second floor. Defendant was still hitting the victim. The victim was screaming for defendant to stop hitting her. After approximately twenty minutes, she stopped screaming. Defendant, who was still holding the gun, shouted that he had killed the victim. Ms. Coker went upstairs and saw that Chavon was unconscious. She saw blood on the walls and a broken bedroom door.

Defendant and the other males in the house carried Chavon outside. Defendant drove her to the hospital. After defendant put Chavon in his car, defendant's brother, his cousin Tyree Chicks, and Mahasin Johnson attempted to remove the blood from the floors and the walls and put defendant's boots in the washing machine.

Gloria Coker testified that she had been threatened

3

by Mahasin Johnson and Nicole Green, who was defendant's girlfriend at the time that he attacked the victim, after she told police officers what she had seen on May 6, 1995. Defendant's brother testified that between 1:00 and 2:00 a.m. he heard screaming on the first floor of his house while he was on the second floor and, when he investigated, he saw the victim sitting in a chair bleeding from her head which was swollen.

On May 11, 1995, defendant's brother, while his mother was present, provided a statement to Investigator Patrick DeFrancisci of the Essex County Prosecutor's Office.  In his statement, defendant's brother said that on May 6 of that year, he was in his home and in the early morning he heard loud screams and, looking in one of the second-floor bedrooms, saw defendant slapping the victim's face.  He stopped defendant and left the room.

A few minutes later, he went downstairs and defendant was slapping and punching the victim's face and body. Harold Wright and Gloria Coker were present but did not intervene.  When defendant stopped punching the victim, the men put her into defendant's car.

Mahasin Johnson, who was fourteen at the time of the incident, testified that on May 6, 1995, at 2:00 a.m., she was at 679D South 10th Street, in Newark, her boyfriend's home.  She stated that she was on the second floor of the house when she heard defendant shouting from the first floor.  She also heard the victim yelling and crying.  She went downstairs and saw the victim sitting on a living room chair, bleeding from her mouth with blood on her shirt.

On June 9, 1995, Mahasin Johnson provided a written statement to Investigator William Isetts of the Essex County Prosecutor's Office in which she stated that on May 6 of that year, she had been in the second floor bathroom of defendant's house when she heard screaming. She saw the victim run upstairs with defendant chasing her.  Ms. Johnson heard defendant repeatedly punch the victim and heard the victim's head hit a wall.  The victim was screaming and ran into another room. Defendant continued to hit the victim in this second bedroom and, later, when the victim was on the floor in the second floor hallway.

In her statement, Ms. Johnson had said that the

4

victim's face was swollen and she was bleeding heavily.
She was bleeding from her eyes and her nose.  The victim
had attempted to cover her face, but that did not
stop defendant from hitting her "real hard."  There
was blood on the floor of the second floor hallway
and on the walls.  Ms. Johnson stated that Harold
Wright and Gloria Coker had used a mop to remove
the blood from the floor.

Newark Police Officer, Willie Winns, testified
that at approximately 3:00 a.m. on May 6, 1995, in
the Emergency Room of University Hospital in Newark,
defendant stated that someone had informed him that
the victim had been "jumped" in a parking lot on
South 10th Street and Springfield Avenue in Newark.
A few minutes later, defendant told Officer Winns
that both he and the victim, whom he described as
his girlfriend, had been "jumped" in the parking lot.

Officer Winns testified that he and his partner
had investigated a report of domestic violence at
defendant's home at approximately 2:00 a.m. on that
same date.  At that time, a male answered their knock
on the door and denied that anyone from that location
had called the police department.

Dr. John Siegel, a professor of trauma surgery and
Chairman of the Department of Anatomy and Cell Biology
at UMDNJ-University Hospital's Medical School in Newark,
testified as an expert in trauma surgery.  He had
examined the sixteen-year-old victim on May 6, 1995,
in University Hospital.  The victim was unconscious and
had severe neurological injury from massive contusions
to the face, head, neck, thigh and hand.  She was in a
"deep profound coma," with minimal signs of neurologic
activity.

The victim's head and face were swollen and bruised.
Her brain was so swollen that the vital neurological
centers were damaged.  The injury was so great that
despite numerous efforts to reduce the swelling in
her brain, the pressure on her brain increased.  She was
pronounced dead at 4:30 p.m., after exhibiting no brain
function which led to cardiovascular collapse.  Yury
Kogan, an Assistant Essex County Medical Examiner,
testified that the victim died from multiple blunt
impact injuries to the head.

On May 11, 1995, defendant provided a written

5

statement to Detective Rashid Sabur of the Homicide
Unit of the Newark Police Department.  In the statement,
defendant related that Chavon had been his girlfriend
and the mother of his son.  At 1:45 a.m. on Saturday,
May 6, 1995, he had had a physical confrontation with
her in his home.  Defendant had taken Chavon from her
house to his.  He claimed that when he returned to his
house from an errand to the grocery store, Gloria Coker
told him that Chavon had been walking around the house
shirtless.  He hit Chavon twice in the face and "smacked
and punched" Chavon again when she was on a bed in a
second floor bedroom.

He claimed that his blows to Chavon would not have
caused her death.  He initially said that Chavon's head
bled from his blows but later changed his story,
asserting that Chavon was not bleeding at all while he
was hitting her.  Defendant noticed Chavon's head was
"wet with blood" when he carried her out of the house
to his car.  He had not wanted the victim to die from
his blows.  Defendant admitted that in March, two months
prior to Chavon's death, he had "smacked" her and caused
her jaw bone to break.

(State v. Jones, A-1165-96T4 (May 28, 1999), pp. 2-8).

2.  Procedural History

On June 27, 1995, an Essex County Grand Jury indicted

Petitioner on five counts, including: second degree aggravated

assault, contrary to N.J.S.A. 2C:12-1b(1) (count one); purposeful

or knowing murder, contrary to N.J.S.A. 2C:11-3a(1) or (2) (count

two); second-degree endangering the welfare of a child, contrary

to N.J.S.A. 2C:24-4 (count three); third-degree unlawful

possession of an assault firearm, contrary to N.J.S.A. 2C:39-5f

(count four); and second-degree possession of an assault firearm

for unlawful purpose, contrary to N.J.S.A. 2C:39-4a (count five).

On February 27, 1996, Petitioner was found guilty by jury

trial of aggravated assault and purposeful or knowing murder.  He

was acquitted of the weapons and child endangerment charges.

On March 15, 1996, Petitioner was sentenced to life imprisonment with a 30-year parole ineligibility term on count two, and a consecutive 10-year term with a 5-year parole bar on count one.

On November 20, 1996, Petitioner was granted permission to file a Notice of Appeal *nunc pro tunc*. On May 28, 1999, Petitioner's conviction and sentence were affirmed by the Superior Court of New Jersey, Appellate Division. On September 13, 1999, the New Jersey Supreme Court denied Petitioner's motion for certification.

Petitioner thereafter filed a petition for Post-Conviction Relief ("PCR"), and on or about October 30, 2001, Petitioner's motion was denied. Petitioner appealed and on April 22, 2003, his appeal was denied. On September 4, 2003, Petitioner's motion for certification to the New Jersey Supreme Court was denied. On January 5, 2004, Petitioner filed the instant Habeas Corpus Petition pursuant to 28 U.S.C. § 2254.

## DISCUSSION

### Petitioner's Claims.

Petitioner asserts the following arguments for habeas relief:

> Ground One - Guilty Verdict as to Murder is Invalid as it is in Violation of Petitioner's Right to Equal Protection.

7

Ground Two - Trial Counsel was Ineffective for Failure to Argue Passion Provocation Defense.

Ground Three - Trial Counsel was Ineffective for Failure to Argue Aggravated Manslaughter or Reckless Manslaughter.

Ground Four - Omission of Limiting Instruction on Other Crimes Evidence Deprived Petitioner of Due Process.

Ground Five - Instruction Allowing Jury to Infer that Petitioner Acted Purposefully or Knowingly Because of the Use of a Gun Deprived Petitioner of Due Process.

Ground Six - Lack of Instruction Regarding Simple Assault Deprived Petitioner of Due Process.

See Petition for Writ of Habeas Corpus.

**Standards Governing Petitioner's Claims.**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

8

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

9

prisoner's case." Id. at 413.  Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999).  Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).  In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations.  See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.

2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**Petitioner's Ground One - Equal Protection Claims.**

Petitioner argues in Ground One of his Petition that the guilty verdict and sentence as to murder is invalid because it

11

violates Petitioner's right to equal protection.  Specifically, Petitioner argues that the jury in his trial was instructed of four predicates available for consideration when considering the proposed charge of murder: (1) purposely causing death; (2) knowingly causing death; (3) purposely causing serious bodily injury resulting in death; and (4) knowingly causing serious bodily injury resulting in death.  Petitioner further argues that the jury was also instructed regarding the lesser included offenses of aggravated manslaughter and reckless manslaughter. However, Petitioner argues, the predicate of knowingly causing serious bodily injury resulting in death is indistinguishable from aggravated manslaughter and reckless manslaughter, and because the jury did not indicate which predicate they based their verdict upon, Petitioner's equal protection rights have been violated.

A review of the record shows that at the conclusion of Petitioner's trial, the Trial Court instructed the jury regarding the elements required to prove murder by causing serious bodily injury resulting in death.  The Trial Court also defined the elements of aggravated manslaughter and reckless manslaughter. The Trial Court further explained that to find Petitioner guilty of murder by causing serious bodily injury resulting in death it was necessary for them to find that Petitioner was aware that it was practically certain that his conduct would result in death. In contrast, the Trial Court explained, Petitioner would be

guilty of aggravated manslaughter or reckless manslaughter if it could be established there was a probability, rather than a possibility, that Petitioner's conduct would result in death.

After Petitioner's conviction, the Superior Court of New Jersey, Appellate Division had occasion to review the instructions given to the jury and found there to be "no error" regarding the elements of the charge of murder or the lesser included offenses of aggravated and reckless manslaughter.

This Court agrees that the jury was properly instructed regarding the predicates of a charge of murder, and said lesser included offenses.  Further, this Court finds that the proper standards of proof were given to the jury, and those standards made the offenses clearly distinguishable.

Additionally, the verdict of murder was fully supported by the underlying evidence produced at trial.  Generally, a claim that the jury's verdict was against the weight of the evidence is "essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support in violation of Petitioner's due process." Douglas v. Hendricks, 236 F. Supp.2d 412, 435-36 (D.N.J. 2002)(Walls, J.)(citation omitted).  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard

must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324, n.16.  <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000).

Here, significant evidentiary support for the verdicts was provided to the jury in the form of testimony of eye witnesses, expert testimony and Petitioner's own statements to police prior to and during his arrest.

As such, Petitioner's conviction and sentence were properly obtained and no violation of equal protection against Petitioner resulted.

**<u>Petitioner's Grounds Two and Three - Ineffective Assistance of Counsel.</u>**

Petitioner next argues that his trial counsel was ineffective.  Specifically, Petitioner argues that trial counsel disregarded the insurmountable evidence against Petitioner, Petitioner's own rendition of events, and the available instructions to the jury regarding manslaughter by choosing to argue that Petitioner was "framed" by law enforcement.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so

14

serious that counsel was not functioning as 'counsel' guaranteed
. . . by the Sixth Amendment," and "that the deficient
performance prejudiced the defense." Id. at 687.  In order to
establish prejudice, the defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different." State v.
Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at
694).  "In any case presenting an ineffectiveness claim, the
performance inquiry must be whether counsel's assistance was
reasonable considering all the circumstances." Strickland, 466
U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also  Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519
U.S. 1020 (1996).

Petitioner raised these same issues of ineffective counsel in the state courts in his petition for PCR.  The Superior Court of New Jersey, Appellate Division reviewed the state courts denial of Petitioner's PCR, and citing <u>Strickland</u>, found that Petitioner had not made a prima facie showing of ineffective assistance to warrant an evidentiary hearing.  The Appellate Court found:

> . . . Trial counsel made a strategic decision . . . [which was] not so wide of the mark that it constituted ineffective assistance . . . defendant was not prejudiced by [defendant's] alleged deficiencies in counsel's performance.  There was overwhelming evidence of guilt presented to the jury, including eyewitness testimony and physical evidence.  This in combination with the fact that defendant's alleged provocation was not sufficient to arouse the passions of an ordinary person would have led the jury to conclude that defendant was guilty of murder, not manslaughter.  . . . Defendant failed to establish a prima facie claim of ineffective assistance of counsel . . .

<u>See</u> Opinion of Superior Court of New Jersey, Appellate Division, dated April 22, 2003 (internal citations omitted).

After a thorough review of the state court record, this Court agrees that Petitioner has not demonstrated that trial counsel was ineffective under the <u>Strickland</u> standard.  Petitioner has demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different.  As the state courts applied the correct <u>Strickland</u> standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that

16

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus are therefore denied.

**Petitioner's Ground Four - Failure by Trial Court to Give Limiting Instruction on the Use of Other-Crimes Evidence.**

Petitioner next argues that the trial court allowed evidence of the victim's jaw and the telephone threat to be considered by the jury with regards to the accompanying aggravated assault charge without issuing a limiting instruction to the jury that such evidence is other-crimes evidence and should not be considered when contemplating the murder charge against Petitioner.

This argument was first presented to the Superior Court of New Jersey, Appellate Division for consideration on direct appeal of Petitioner's verdict and/or sentence.  The Appellate Court found:

> . . . Contrary to defendant's assertion, the trial judge was not required to give a limiting instruction concerning the permitted and prohibited purposes of other-crimes evidence where the "other crime" is one of the multiple charges for which the defendant is currently being tried. All that is required in such a situation is for the judge to instruct the jury that it must determine defendant's guilt on each of the counts separately . . . The jury's ability to comply with an instruction to determine defendant's guilt on each of the counts separately is evidenced by acquittal on some counts and conviction on others . . . Even if the trial judge should have given the jury a limiting instruction

17

> . . . it is well recognized that the failure to give a
> limiting instruction regarding the use of other-crime,
> civil-wrong or act evidence does not constitute grounds for
> reversal where the evidence of defendant's guilt is
> substantial . . .

See Opinion of Superior Court of New Jersey, Appellate Division,
dated May 28, 1999 (internal citations omitted).

After a very careful review of the state record, this Court
agrees with the holding of the state appellate court.  The law is
clear that the jury needed only to be instructed to consider each
charge separately.  See State v. Modell, 260 N.J. Super. 227, 246
(App. Div. 1992).  The Trial Court did just that when it stated
to the jury during its instructions that they were "to consider
each charge separately, distinctly and independently, that is you
are to give separate consideration with respect to each count of
the indictment."  (State Court Record, Exhibit Ra18).

Further, the Trial Court had determined, pretrial, that the
verbal threat and the prior physical alteration were admissible
pursuant to New Jersey Rules of Evidence 404(b)[1], which
ultimately provided the reasoning of the Trial Court not to sever
the aggravated assault charge from the remaining counts of the
indictment.

As such, Petitioner's claim regarding the lack of limiting
instructions regarding other-crimes evidence is without merit and
will be denied.

------

[1] It should be noted that New Jersey Rule of Evidence
404(b) is duplicative of Federal Rule of Evidence 404(b).

18

**Petitioner's Ground Five - Instruction Allowing Jury to Infer
Petitioner's Purpose or Knowledge from Petitioner's Use of a Gun.**

Petitioner's next assertion argues that the Trial Court erred by allowing the jury to infer Petitioner's purpose or knowledge from his use of a gun during the commission of the offense.

However, as the Superior Court, Appellate Division found, the Trial Court properly instructed the jurors to consider all of the surrounding circumstances in assessing Petitioner's mental state, including the location, number and nature of the wounds inflicted and everything that Petitioner said and did before, during and immediately after the vents leading to the victim's death.  Additionally, as the Appellate Court further found, the jury was not misled by the judge's instructions concerning the permissive inference that could be drawn since it found defendant not guilty of the weapons offenses.

Therefore, Petitioner's Ground Five is without merit and shall be denied.

**Petitioner's Ground Six - Lack of Instruction on Simple Assault
Due Process Violation.**

Petitioner's final ground for relief alleges that the Trial Court failed to include the lesser included offense of simple assault when it instructed the jury regarding the charged offense of aggravated assault.

This Court finds Petitioner's argument to be without merit. The state court record clearly reflects that the aggravated

19

assault charge is the result of the prior attack on the victim which resulted in her jaw being broken.  The effects of that attack, and the resulting wiring of the victim's jaw and inability to eat solid foods during the healing process clearly set the assault beyond the definition of simple assault, as that is defined in the New Jersey Criminal Code.

Further, a New Jersey trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." N.J.S.A. 2C:1-8e.

Therefore, the Trial Court was not in error for failing to charge the lesser included offense of simple assault and Petitioner's final ground for relief is denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares
United States District Judge

DATED: May 24, 2006

20